1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT ZEPEDA,                    )  Civil No. 11cv2350 JAH (RBB)
                                      )
12              Petitioner,           )  **REPORT AND RECOMMENDATION**
                                      )  **DENYING FIRST AMENDED PETITION**
13  v.                                )  **FOR WRIT OF HABEAS CORPUS [ECF**
                                      )  **NO. 7]**
14  JEFFREY BEARD, Secretary of the   )
    California Department of          )
15  Corrections and Rehabilitation,   )
                                      )
16              Respondent.           )
                                      )
17  _____ )

18       Petitioner Robert Zepeda, a state prisoner proceeding pro se

19  and in forma pauperis, filed a First Amended Petition for Writ of

20  Habeas Corpus on March 22, 2012, against F.E. Figueroa, warden of

21  North Fork Correctional Facility, and Steven Cooley [ECF Nos. 5,

22  7].[1]  Zepeda contests his convictions for robbery and assault with

23  _____

24       [1]  Zepeda's original Petition was dismissed without prejudice
    on October 17, 2011 [ECF No. 5].  Petitioner later filed an amended
25  petition [ECF No. 7], which he titled "Petition for Writ of Habeas
    Corpus."  For purposes of clarity, the Court will refer to that
26  document as the "First Amended Petition."

27       In his First Amended Petition, Zepeda names "F.E. Figueroa,
    Warden" as a Respondent.  (First. Am. Pet. 1, ECF No. 7.)  It
28  appears that Figueroa is no longer the warden of North Fork
    Correctional Facility; the Court therefore substitutes Jeffrey
    Beard, secretary of the California Department of Corrections and

                                 1

a firearm on several bases.  (First Am. Pet. 2, 6-10, ECF No. 7.)[2]
Petitioner contends, in ground one, that he received ineffective
assistance of counsel during the "pleading and bargaining phase."
(Id. at 6.)  In grounds two and three, respectively, he insists
that he was coerced into pleading guilty and that his plea was not
intelligent.  (Id. at 7-8.)  His fourth claim is that the trial
court erred by sentencing him to the highest statutory term of
imprisonment without a jury's finding to support the sentence.
(Id. at 9.)  Finally, Zepeda claims that his "conviction was the
result of the [court's] abuse of discretion in violation of due
process . . . ."  (Id. at 10.)

     The Attorney General for the State of California filed an
Answer on behalf of the Oklahoma warden along with a Memorandum of
Points and Authorities and Notice of Lodgment on April 17, 2013
[ECF Nos. 46, 47].  Petitioner's Traverse was filed nunc pro tunc
to June 27, 2013.  (Mins., July 11, 2013, ECF No. 55; Traverse 1,
ECF No. 56.)  The Court has reviewed the First Amended Petition,
Answer, the lodgments, and Traverse.  For the reasons stated below,
the First Amended Petition [ECF No. 7] should be **DENIED**.

---

Rehabilitation ("CDCR"), for Figueroa.  See Gray v. Beard, No.
2:11-cv-2974-JKS, 2013 WL 5934153, at *1 (E.D. Cal. Nov. 1, 2013)
(substituting Beard as respondent in place of Figueroa); Pedroza v.
Tilton, Civil No. 05cv2169-BTM (PCL), 2007 WL 1711781, at *1 (S.D.
Cal. June 12, 2007) (substituting the CDCR secretary as respondent
in place of former warden at Ironwood State Prison); North Fork
Correctional Facility, Oklahoma Department of Corrections,
http://www.ok.gov/doc/Organization/Field_Operations/Private_Prison_
&_Jail_Administration/North_Fork_Correctional_Facility.html
(visited Dec. 16, 2013) (listing William Sherrod as warden).

     [2]  The Court will cite to all filed documents using the page
numbers assigned by the electronic case filing system.  Because all
of the lodgments are not consecutively paginated, the Court has
paginated each lodgment and will cite to each using the assigned
page numbers.

## I.   FACTUAL BACKGROUND

**A.   Plea Negotiations and Change of Plea**

On April 14, 2010, Petitioner's retained counsel, Frederick M. Carroll, negotiated a plea bargain on Zepeda's behalf for the above-mentioned offenses.  (Lodgment No. 8, Zepeda v. Warden, [HC 20593] (Cal. Super. Ct. Aug. 24, 2011) (petition for writ of habeas corpus at 4); Lodgment No. 10, Zepeda v. Warden, [D061017] (Cal. Ct. App. Dec. 29, 2011) (petition for writ of habeas corpus at 13).)  The Petitioner waited outside of the courtroom while the attorneys and Judge John S. Einhorn discussed the terms of the plea bargain.  (Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for writ of habeas corpus at 13).)  Caroll emerged from the courtroom and informed Zepeda that the prosecution offered him a ten-year plea deal consisting of one year for robbery and nine years for a gang enhancement.  (Id. at 13-14.)

Petitioner was unhappy with the offer and sent Carroll back into the courtroom to renegotiate.  (Id. at 14.)  Following the second round of negotiations, counsel returned and told Petitioner that the judge "was mad as [Carroll] had never seen him before of [sic] the whole situation."  (Id.)  Counsel said that Judge Einhorn told him that if Zepeda did not accept the deal he would impose the maximum sentence allowed.  (Id.)  Carroll urged Zepeda to accept the plea bargain.  (Id.)

Petitioner asked for additional time to discuss the deal with his sister because he did not have "an understanding of the essential elements of the crime charged or of how each offense related to the law."  (Id.)  Counsel continued to pressure Zepeda into signing the plea agreement, but eventually agreed to meet with

Petitioner and his sister later in the evening to discuss the terms of the deal. (<u>Id.</u>)  Carroll stated that the offer was only available until the following day and only if Zepeda's codefendants also accepted. (<u>Id.</u>)

Later that evening, Petitioner and his sister met with Carroll in his law office. (<u>Id.</u>)  There, Zepeda submits that counsel told him that if he signed the agreement he could possibly get a probation interview and receive a sentence of less than ten years. (<u>Id.</u> at 28.)  Throughout the meeting, Carroll pressured Petitioner to sign the plea agreement form even though it was not filled out. (<u>Id.</u> at 15, 27.)  According to Zepeda, he was hesitant to sign a blank plea form. (<u>Id.</u>)  Carroll insisted that Petitioner sign the form that evening so they could save time before the hearing the following morning and appear "ready and professional." (<u>Id.</u>)  He also told Zepeda that he could sign a blank agreement and "wait for the prosecution to make a mistake on the plea agreement that will be favorable to Petitioner." (<u>Id.</u> at 15, 28.)

Zepeda contends that his attorney explained the contents of the form quickly, knowing that Petitioner did not have a clear understanding of what he was signing. (<u>Id.</u> at 27.)  He claims that he signed and initialed the incomplete plea agreement out of fear that the judge would otherwise impose a longer sentence. (<u>Id.</u> at 15, 28.)  Zepeda maintains that at no time did counsel advise him that he was agreeing to a stipulated sentence or pleading guilty to an assault charge. (<u>Id.</u> at 16.)

Petitioner's change of plea hearing was held the following day. (<u>See</u> Lodgment No. 12, <u>Zepeda v. Warden</u>, S201310 (Cal. filed Apr. 2, 2012) (petition for writ of habeas corpus at 56).)  At the

4

1    hearing, the court inquired into Zepeda's willingness to plead

2    guilty and waive his constitutional rights:

3           THE COURT:  Mr. Zepeda, I have in front of me a
        change of plea form with your name as the defendant.
4    Within that change of plea form there are a number of
        boxes that appear to have your initials.  And on page 3
5    of the change of plea form next to the line that says
        defendant's signature there appears your signature.

6
            Are these your initials and signatures, sir?
7
            THE DEFENDANT:  Correct.  Yes.
8
            THE COURT:  Before you initialed and signed the
9    change of plea form, did you go over the change of plea
        form with your lawyer?
10
            THE DEFENDANT:  Yes.
11
            THE COURT:  And are the statements contained in
12   your change of plea form true and correct, sir?

13          THE DEFENDANT:  YES.

14          THE COURT:  You're offering to plead guilty to
        Count 1, the robbery, and to Count 4, the assault with a
15   firearm.  And as to that count, you're admitting that
        the assault with a firearm was for the benefit of a
16   criminal street gang.

17          Is that your understanding of what you're going to
        do?
18
            THE DEFENDANT:  I'm sorry.  Do what?
19
            THE COURT:  Pardon me?
20
            THE DEFENDANT:  Do what?  I don't understand the
21   question.

22          THE COURT:  Okay.  You're offering to plead guilty
        to robbery plus assault with a firearm.  And on the
23   charge that's assault with a firearm you're admitting
        [the] gang allegation.  And you and the district
24   attorney have stipulated that you will receive a ten-
        year prison sentence, and the district attorney will
25   dismiss the balance of the charges against you.

26          Is that your understanding of the deal?

27          THE DEFENDANT:  Right.

28

1    THE COURT:  Mr. Zepeda, do you have any questions
     for me either about the contents of the change form or
2    what you're doing here today?

3    THE DEFENDANT:  No questions.

4    (Id. at 58-59.)

5    Petitioner then proceeded to plead guilty to the robbery

6    charge.  (Id. at 60.)  When it came time to plead to the

7    assault charge, Zepeda hesitated until it was clear that he

8    was pleading guilty under an aider and abettor theory.

9    THE COURT:  And how do you now plead to Count 4,
     the assault with a firearm charge that charges on or
10   about July 8th, 2009, you unlawfully committed an
     assault upon another with a firearm, in violation of
11   Penal Code Section 245(a)(2)?

12   Guilty or not guilty.

13   THE DEFENDANT: Aware of -- I'm aware of the charge
     against me but --
14
     MR. CARROLL:  Your Honor, if I can clarify, I think
15   the factual basis -- the district attorney and I agree
     that he was pleading guilty under an aiding and abetting
16   theory, and I think that's the source of confusion right
     here.
17
     THE COURT:  Okay.  Is that correct?
18
     MS. DIAZ:  It is correct.
19
     Mr. Zepeda was the driver of the car, not the
20   shooter.

21   THE COURT:  All right.  How do you now plead to
     that count under an aider and abettor theory, that is
22   that you were the driver of the vehicle from which [a]
     shot or shots were fired by somebody else?
23
     THE DEFENDANT:  Guilty.
24
     THE COURT:  And do you admit that in connection
25   with that crime, it was for the benefit of and at the
     direction of and in association with a criminal street
26   gang?

27   Yes or no.

28   THE DEFENDANT:  Yes.

6

```
 1        THE COURT:  People satisfied there's a factual
     basis for the plea?
 2
          MS. DIAZ:  Yes, your Honor.
 3
          THE BAILIFF:  Have a seat.
 4
          THE COURT:  On page 3, paragraph 15, the plea is
 5   based upon the following:  On July 8th, 2009, I robbed
     Mullen's liquor store by means of force or fear.   I
 6   aided and abetted an assault with a firearm and
     committed the assault for the benefit of and in
 7   association with a criminal street gang within the
     meaning of Penal Code Section 186.22(b)(1).
 8
          Is that what you did that makes you think you're
 9   guilty of these crimes, sir?

10        THE DEFENDANT:  Yeah.  I took chips.

11        THE COURT:  What?

12        THE DEFENDANT:  I took chips and guilty of -- of --

13        MR. CARROLL:  Was taken on -- part of the robbery
     was chips.  So he's saying he did in fact take them.  He
14   was just specifying what he took and that the balance is
     also true.  He's pleading guilty to it.
15
          THE COURT:  So this whole thing was precipitated by
16   stealing chips?

17        MS. DIAZ:  Yes, your Honor.

18        THE COURT:  Mr. Carroll, do you join in your
     client's waiver of constitutional rights and pleas of
19   guilty and admissions?

20        MR. CARROLL:  Yes, your Honor.

21        THE COURT:  All right.  I'll accept the pleas of
     guilty and admissions of the special allegation and make
22   the findings and order on the change of plea form above
     my signature.  The pleas of guilty, the change of plea
23   form will be made a part of the record of this
     proceeding.
24
          Ms. Diaz, in light of the pleas and admissions, do
25   the People have a motion as to the balance of the
     Information as against Mr. Zepeda?
26
          MS. DIAZ:  Yes, your Honor.  Motion to dismiss the
27   balance in furtherance of the plea.

28
```

1          THE COURT:  Thank you.  That motion will be
2     granted.

3    (Id. at 60-62.)

4          Two weeks later, Carroll and Zepeda met to discuss his
5    confusion about the terms of the plea agreement.  (Lodgment No. 10,
6    Zepeda v. Warden, [D061017] (petition for writ of habeas corpus at
7    21).)  Petitioner maintains that he also spoke with Carroll on June
8    10, 2010, but was informed that there was little they could do at
9    that point to change the terms of the plea agreement.  (Id. at 22.)

10   **B.    Sentencing Hearings**

11         At Zepeda's sentencing hearing on June 11, 2010, he addressed
12   the court and raised concerns about Carroll's representation.  (Id.
13   at 16.)  He requested an extension of time for sentencing so that
14   he could hire a new attorney.  (Id.)  The court interpreted his
15   comments as raising a claim for ineffective assistance of counsel.
16   (Id. at 17.)  At Zepeda's request, the court appointed a new
17   attorney for the limited purpose of determining whether Carroll
18   provided ineffective assistance in connection with Zepeda's plea.
19   (Id.)  The judge continued sentencing and did not accept documents
20   that Petitioner had brought with him to show his good character.
21   (Id.)

22         At the continued sentencing hearing on July 23, 2010, Daniel
23   Cohen represented Zepeda for the purpose of exploring a motion to
24   withdraw the guilty plea; Cohen informed the court that the
25   Petitioner did not wish to withdraw his plea.  (Lodgment No. 15,
26   Rep.'s Tr. 2, July 23, 2010.)  Cohen stated that he had reviewed
27   the transcript and spoke with the attorneys and Zepeda.  (Id.)  The
28

8

judge asked Petitioner if Cohen's statements were true; he replied, "Correct."  (Id. at 3.)

The court proceeded to impose the stipulated sentence:

> THE COURT:  Mr. Zepeda, consistent with the stipulated sentence that you signed up for, sir, as to Count 1, the -- let's make Count 4 the primary term. That's the 245(a)(2).  And this Court will select the midterm of four years.  Probation is denied.
>
> Mr. Zepeda, and on the 245 you're committed to the Department of Corrections for the midterm of four years. With the admission of the gang enhancement under 186.22(b)(1), there must be an additional five years consecutive or in addition to the midterm as to Count 4 for a total term in Count 4 of nine years.
>
> You also pled to the robbery, Count 1.  And in that count probation is denied.  You're committed to the Department of Corrections for the additional term of one year.  That's one-third the midterm for 211, and that would be consecutive or in addition to the sentence imposed in -- in Count 4 mainly because they were separate incidents.  But that's how you got to ten also.
>
> So for a total term, sir, of ten years.

(Id. at 4.)

## II.  PROCEDURAL BACKGROUND

Zepeda filed a petition for writ of habeas corpus in San Diego Superior Court on approximately June 30, 2011.  (Lodgment No. 8, Zepeda v. Warden, [HC 20593] (petition for writ of habeas corpus at 1, 30-31).)  The superior court denied the petition on August 24, 2011.  (Lodgment No. 9, In re Zepeda, HC 20593, order at 5 (Cal. Super. Ct. Aug. 24, 2011).)  On December 6, 2011, Petitioner filed a habeas corpus petition with the California Court of Appeal; the court of appeal denied it on December 29, 2011.  (Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for writ of habeas corpus at 1); Lodgment No. 11, In re Zepeda, D061017, slip op. at 2 (Cal. Ct. App. Dec. 29, 2011).)  Zepeda filed a petition on April 2, 2012,

9

1   with the California Supreme Court.  (Lodgment No. 12, <u>Zepeda v.</u>
2   <u>Warden</u>, S201310 (petition for writ of habeas corpus at 1).)  The
3   California Supreme Court denied the petition without comment on
4   June 27, 2012.  (Lodgment No. 16,
5   http://appellatecases.courtinfo.ca.gov (select supreme court; then
6   search by case number and follow to docket (visited December 16,
7   2013)).)

8       On October 11, 2011, Petitioner filed a Petition for Writ of
9   Habeas Corpus [ECF No. 1] and a "Motion for Leave to Stay and Abey
10  Petitioner's Writ of Habeas Corpus on Unexhausted Claims [ECF No.
11  4]" with this Court.  The Motion to Stay and Abey was denied and
12  the Petition was dismissed without prejudice on October 17, 2011.
13  (Order 3-4, ECF No. 5.)  Petitioner filed his First Amended
14  Petition on March 20, 2012 [ECF No. 7].  The same day, he also
15  filed a another "Motion for Leave to Stay and Abey Petitioners Writ
16  of Habeas Corpus on Unexhausted Claims" [ECF No. 9].  On April 30,
17  2012, Respondent filed a "Motion to Dismiss First Amended Petition
18  for Writ of Habeas Corpus as Untimely Filed [ECF No. 14]" (the
19  "Motion to Dismiss").

20      The second request to stay the case was denied as moot because
21  Zepeda's claims had been exhausted.  (Report & Recommendation Den.
22  Mot. Stay & Abey 4, ECF No. 21; Order Adopting Report &
23  Recommendation 3, ECF No. 30.)  Petitioner's third request to stay
24  the case was filed nunc pro tunc to December 6, 2012 [ECF No. 32].
25  On December 17, 2012, the Court issued a report and recommendation
26  denying the Motion to Dismiss and an order denying Zepeda's third
27  request for a stay [ECF No. 33].  Judge Houston's Order Adopting
28  the Report and Recommendation was filed on March 11, 2013 [ECF No.

40].   Respondent filed an Answer and Notice of Lodgment on April 17, 2013 [ECF Nos. 46, 47].   Petitioner's Traverse was filed nunc pro tunc to June 27, 2013.   (Mins., July 11, 2013, ECF No. 55; Traverse 1, ECF No. 56.)

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, applies to all federal habeas petitions filed after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).   AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).   Because Zepeda's First Amended Petition was filed on March 20, 2012, AEDPA applies to this case.   See Woodford, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997), abrogated on other grounds, Williams v. Taylor, 529 U.S. 362 (2000).   As amended, section 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). A petitioner must allege the state court violated his federal constitutional rights. Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson, 921 F.2d at 885 (explaining that federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal habeas courts are not concerned with errors of state law "unless they rise to the level of a constitutional violation").

The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary

12

to, or involved an unreasonable application of, clearly established Federal law." Id. at 71.  In other words, a federal court is not required to review the state court decision de novo.  Id.  Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1).  Id.

The "novelty in . . . § 2254(d)(1) is . . . the reference to 'Federal law, as determined by the Supreme Court of the United States.'" Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." Id.  "A state court decision may not be overturned on habeas review, for example, because of a conflict with Ninth Circuit-based law . . . ." Moore, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." Id. (citing Childress v. Johnson, 103 F.3d 1221, 1224-26 (5th Cir. 1997); Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996)).

Furthermore, with respect to the factual findings of the trial court, AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1).

13

1           **IV.   DISCUSSION**

2   **A.   Proper Respondents**

3           In the First Amended Petition, Zepeda names "Steven Cooley,

4   The Attorney General of the State of California" as a Respondent.

5   (First. Am. Pet. 1, ECF No. 7.)  Yet Steven Cooley is not the

6   Attorney General of California.  The Court infers that Petitioner

7   is attempting to name Kamala Harris as a Respondent.  "A state's

8   attorney general is a proper party only if the petitioner is not

9   then confined, but expects to be taken into custody."  Hogan v.

10  Hanks, 97 F.3d 189, 190 (7th Cir. 1996); see Rules Governing § 2254

11  Cases, Rule 2(b), 28 U.S.C.A. foll. § 2254 (West 2006).  Because

12  Zepeda is already incarcerated, Harris is not a proper respondent.

13  **B.   Claim One:  Ineffective Assistance of Counsel**

14          Petitioner's ineffective assistance of counsel claim, as it

15  appears in its entirety in the First Amended Petition, provides:

16               Petitioner was convicted on the basis of a guilty
             plea that was the product of ineffective assistance of
17           counsel in violation of Petitioner's right to effective
             counsel guaranteed by Amendment 6 to the U.S.
18           Constitution and a Fair Trial, as well as due process of
             law safeguarded by the 5[th] and 14[th] Amendments.
19           Counsel rendered ineffective assistance of counsel at
             the pleading and bargaining phase.

20

21  (First Am. Pet. 6, ECF No. 7.)  Zepeda also lists several cases

22  without comment.  (See id.)

23          In the petition he filed in the California Court of Appeal,

24  Petitioner elaborated on this claim.  He alleges that unbeknownst

25  to him the plea agreement included an assault charge, stipulated

26  sentence, and would require him to register as a gang member.

27  (Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for writ of

28  habeas corpus at 19, 25); see Lodgment No. 12, Zepeda v. Warden,

                                    14

S201310 (petition for writ of habeas corpus at 11-13).)[3] He
claims that he would have proceeded to trial if Carroll had
properly explained the terms of the plea agreement to him.
(Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for writ of
habeas corpus at 25).)

Figueroa insists that the First Amended Petition contains
conclusory, vague, and speculative allegations that do not provide
a basis for habeas relief. (Answer Attach. #1 Mem. P & A. 8, ECF
No. 46.)[4] Respondent argues that Zepeda decided not to proceed
with his motion to withdraw his guilty plea, which demonstrates
that Petitioner "found no cause to complain of the plea." (Answer
Attach. #1 Mem. P. & A. 16, ECF No. 46.) According to Figueroa,
Zepeda has failed to provide evidence that he signed a blank plea
agreement form. (Id.) Further, Petitioner initialed and signed
the plea form, declaring under penalty of perjury that he read and
understood the offer. (Id.)

Respondent contends that the trial judge explained the plea
bargain to Zepeda, who acknowledged reading and understanding its
terms. (Id.) These terms, Figueroa submits, included the

---

[3] Although Petitioner makes additional allegations in his
state habeas corpus petitions, the Court will only address those
that fall under the umbrella of the specific ineffective assistance
of counsel claim raised in his federal petition: that counsel
provided ineffective assistance at "the pleading and bargaining
phase."

[4] Figueroa's Answer references a habeas petition that was
allegedly completed by Zepeda and sent to Respondent, but never
filed with this Court. (See id. at 10-11; Lodgment No. 14, Zepeda
v. Figueroa (unfiled petition for writ of habeas corpus).) The
ineffective assistance of counsel claim raised in the unfiled
petition contains the same assertions as the petition Zepeda filed
with the California Court of Appeal. (Compare Lodgment No. 14,
Zepeda v. Figueroa (unfiled petition for writ of habeas corpus at
14-16), with Lodgment No. 10, Zepeda v. Warden, [D061017] (petition
for writ of habeas corpus at 19-26).)

11cv2350 JAH (RBB)

1   stipulated sentence and waiver of Zepeda's rights.  (Id.)

2   Respondent alleges that all of the evidence shows that Petitioner

3   understood the terms of the agreement, and there was no discussion

4   of the possibility of probation.  (Id.)  Finally, Figueroa

5   maintains that reasonable jurists could agree with the state

6   courts' opinions, precluding habeas relief here.  (Id. at 17.)

7        In his Traverse, Zepeda asserts that Carroll did not "follow

8   the proper procedures regarding the issuance of pleas, and in

9   accordance to the Rules of Professional Conduct . . . ."  (Traverse

10  10, ECF No. 56.)  Petitioner argues that his affidavit, Elizabeth

11  Ochoa's affidavit,[5] and the June 10, 2010 Reporter's Transcript

12  demonstrate that he is entitled to habeas relief.  (Traverse 10-11,

13  ECF No. 56.)

14       The last state court to address the merits of Zepeda's

15  ineffective assistance of counsel claim was the California Court of

16  Appeal.  (See Lodgment No. 11, In re Zepeda, D061017, slip op. at

17  1-2.)  This Court examines that decision.  Ylst v. Nunnemaker, 501

18  U.S. 797, 806 (1991).  The appellate court found that Carroll's

19  performance was not deficient:

20          A review of the record reveals that the plea
        agreement was explained to petitioner and that he asked
21       for time to think about the agreement and talk it over
        with his sister, and the court granted petitioner an
22       extra day to consider the plea.  The plea agreement
        indicates that he entered his "plea freely and
23       voluntarily, without fear of threat to [him] or anyone
        close to [him]" and petitioner initialed a box indicating
24       the stipulated 10-year term and explaining its

25  _____

26       [5]  Zepeda provided the California Court of Appeal with a
    statement from his sister claiming that she saw Carroll provide
27  Petitioner with a blank plea agreement form to sign and did not
    tell him that he was agreeing to plead guilty to an assault charge.
28  (See Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for
    writ of habeas corpus at 87-88).)  Petitioner did not include a
    copy of his sister's statements with his federal petition.

16

calculation.  The plea hearing also shows that the court went over the plea agreement with petitioner and that he understood he would receive the stipulated sentence. Petitioner waived his rights and pleaded guilty.  The record also shows that, after pleading guilty, the court appointed another attorney for petitioner to explore a motion to withdraw the plea.  After consultation with the attorney, petitioner indicated he did not want to move to withdraw his plea, and he was sentenced.

.  .  .  .

Counsel was not deficient by warning petitioner that he could receive a harsher sentence considering the prosecution dismissed additional counts in exchange for the plea.  (Strickland v. Washington (1984) 446 U.S. 668, 687.)

(Lodgment No. 11, In re Zepeda, D061017, slip op. at 1-2.)  The court did not address whether Zepeda suffered any prejudice as a result of Carroll's conduct.  (See id.)

"It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'"  Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); see also Foote v. Del Papa, 244 F. App'x 74, 80 (9th Cir. 2007) (holding that conclusory allegations in a habeas petition do not warrant relief, even where the petitioner includes factual assertions in a traverse).  To plead a sufficient claim for relief, Zepeda "'must point to errors or omissions in the record on appeal that establish that he did not receive adequate representation.'"  United States v. Taylor, 802 F.2d 1108, 1119 (9th Cir. 1986) (quoting United States v. Rogers, 769 F.2d 1418, 1424 (9th Cir. 1985)).  Vague and speculative assertions of counsel's deficient performance do not fulfill the burdens that the Supreme Court established in Strickland v. Washington, 466 U.S. 668 (1984).  (Id.)

As to claim one, the First Amended Petition is completely void of any factual allegations.  The two-sentence claim does not reference the record or give any indication of how Carroll's performance was inadequate or resulted in prejudice.  (First Am. Pet. 6, ECF No. 7.)  The Court therefore recommends that Zepeda's ineffective assistance of counsel claim be **DENIED** on this basis.

Alternatively, the Court will consider the merits of Petitioner's ineffective assistance of counsel claim by looking to the factual allegations in his state habeas corpus petitions.  For ineffective assistance of counsel to provide a basis for federal habeas relief, Zepeda must satisfy the two-part test outlined in Strickland, 466 U.S. at 687.  First, Petitioner must show that his counsel's performance was deficient.  Id.  Second, he must establish that counsel's deficient performance prejudiced the defense.  Id.  To satisfy the prejudice prong, Zepeda need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  Williams, 529 U.S. at 406; Strickland, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  The United States Supreme Court noted that "[s]urmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

In the context of federal habeas review, "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so[.]"  Harrington v. Richter, 562 U.S. __, __, 131 S. Ct. 770, 788 (2011) (citations omitted).  "When § 2254 applies, the question is not

18

whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied _Strickland_'s deferential standard."  _Id._

Trial counsel is presumed to be competent.  _Strickland_, 466 U.S. at 689.  "To rebut this presumption, [Petitioner] must demonstrate that his counsel's performance was unreasonable under prevailing professional norms and was not the product of sound strategy."  _Sechrest v. Ignacio_, 549 F.3d 789, 815 (9th Cir. 2008) (citing _Strickland_, 466 U.S. at 688-89).  Counsel's representation is deficient if "it falls outside the range of competence demanded of attorneys in criminal cases."  _Id._

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in _Strickland_."  _Missouri v. Frye_, ___ U.S. ___, 132 S. Ct. 1399, 1405 (2012) (citing _Hill v. Lockhart_, 474 U.S. 52, 57 (1985)); _see_ _Lafler v. Cooper_, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012).  To demonstrate that the attorney's performance was deficient, Zepeda must show that Carroll "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  _Strickland_, 466 U.S. at 687.  Under the prejudice prong, Petitioner must demonstrate "that if he . . . had received accurate information and advice, he . . . would not have accepted the plea."  _Cerda v. HedgPetch, Kern State Prison_, 744 F. Supp. 2d 1058, 1070 (C.D. Cal. 2010) (citing _Hill_, 474 U.S. at 56-57).  The Court must determine if Carroll's advice was inadequate when compared to "objectively reasonable advice under prevailing professional norms."  _Sophanthavong v. Palmateer_, 378 F.3d 859, 870 (9th Cir. 2004) (citations omitted).

19

Here, Zepeda admitted the factual allegations and pleaded guilty to robbery and assault with a firearm. (Lodgment No. 12, Zepeda v. Warden, S201310 (petition for writ of habeas corpus at 60-61).)  The prosecutor dismissed the remaining charges against him after the court accepted the plea. (Id. at 62.)  Additionally, after becoming aware of Petitioner's initial ineffective assistance of counsel allegations, the court continued sentencing and appointed a new attorney to represent Zepeda and consider whether to withdraw the plea. (Lodgment No. 5, Rep.'s Tr. 5-6, June 11, 2010.)  At the continued sentencing hearing, Zepeda stated that he did not wish to withdraw his guilty plea. (Lodgment No. 15, Rep.'s Tr. 2-3.)

A petitioner "bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'"  Burt v. Titlow, __ U.S. __; 134 S. Ct. 10, 15 (2013).  Here, statements by Zepeda's sister are the only evidence indicating that Petitioner did not know about the assault charge or stipulated sentence.  See Lodgment No. 10, Zepeda v. Warden, [D061017] (petition for writ of habeas corpus at 87-88).)  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  Id. (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).  The court of appeal weighed the evidence and rejected Zepeda's claim.  In light of the evidence supporting the state courts' decisions, their factual determinations were not objectively unreasonable.  28 U.S.C.A. § 2254(d)(2); see also id. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."); Burt, __ U.S. at __, 134 S. Ct. at 13

("[AEDPA and Strickland] do not permit federal judges to so casually second-guess the decisions of their state-court colleagues or defense attorneys . . . .").

Nor was the California Court of Appeal's decision contrary to, or an unreasonable application of, clearly established Supreme Court law.  See 28 U.S.C.A. § 2254(d)(1).  Petitioner has not established that counsel's performance was so deficient that he was no longer acting as "counsel" under the Sixth Amendment.  See Strickland, 466 U.S. at 687.  Attorney Carroll provided reasonable advice by recommending that Zepeda plead guilty to the robbery and assault charges in order to avoid going to trial on all charges. The state courts did not apply Strickland in an unreasonable manner.  See Cuellar v. Uribe, No. ED CV 10-1024-DOC (PLA), 2011 WL 891073, at *8 (C.D. Cal. Feb. 1, 2011) (rejecting ineffective assistance of counsel claim under Strickland where petitioner followed counsel's advice to plead guilty to gross vehicular manslaughter to avoid a potential murder conviction at trial); Olsen v. Prosper, No. 2:04-cv-00640-ALA, 2008 WL 564823, at *7 (E.D. Cal. Feb. 28, 2008) (finding no ineffective assistance of counsel where petitioner pleaded guilty on advice of counsel and was sentenced to six years, avoiding a possible twelve-year sentence).  For all these reasons, Zepeda's ineffective assistance of counsel claim should be **DENIED**.

C.   <u>**Claim Two:  Coerced Guilty Plea**</u>

Next, Petitioner contends that he was coerced into pleading guilty.  (First Am. Pet. 7, ECF No. 7.)  He explains his claim as follows:

1     Petitioner was convicted pursuant to a "package-
2   deal" arrang[e]ment that was coerced by the state in
   violation of due process of law as guaranteed by
3   Amendments 5, 6 and 14 to the U.S. Constitution, as well
   as the 8[th] Amendment defending against
4   disproportionate punishment.  Specifically, counsel
   misrepresented and failed to disclose the full terms and
5   consequences of the offer, both orally and written,
   where the allegations and conditions of the offer would
6   be instituted at a later time without Petitioner[']s
   awareness before the change of plea hearing.
7   Petitioner[']s plea was the result of unconstitutional
   coercion.

8 (Id.)

9   Petitioner outlined the basis for this claim in his state

10 habeas corpus petitions.  (See Lodgment No. 10, Zepeda v. Warden,

11 [D061017] (petition for writ of habeas corpus at 13-18); Lodgment

12 No. 12, Zepeda v. Warden, S201310 (petition for writ of habeas

13 corpus at 14-16.)  There, he alleged that he was coerced into

14 signing the plea agreement because (1) he thought he would receive

15 a longer sentence if he did not sign the agreement, and (2) his

16 attorney pressured him to sign the agreement without disclosing all

17 of its terms.  (Lodgment No. 10, Zepeda v. Warden, [D061017]

18 (petition for writ of habeas corpus at 13, 17); see Lodgment No.

19 12, Zepeda v. Warden, S201310 (petition for writ of habeas corpus

20 at 14-16).)

21   Respondent insists that the allegations in the First Amended

22 Petition are conclusory, vague, and speculative.  (Answer Attach.

23 #1 Mem. P & A. 8, ECF No. 46.)  Figueroa argues that the judge's

24 findings and Zepeda's representations while accepting the plea

25 bargain "'constitute a formidable barrier.'"  (Id. at 17 (quoting

26 Blackledge v. Allison, 431 U.S. 63, 74 (1977)).)  According to the

27 Respondent, the record shows no evidence of coercion.  (Id. at 18.)

28

1    Figueroa maintains that Petitioner initialed portions of the

2    agreement stating that he was not threatened and was voluntarily

3    pleading guilty.  (Id.)  Respondent urges that Zepeda's coercion

4    claim is also undermined by the fact that he was appointed a new

5    attorney to address his concerns, yet declined to withdraw his plea

6    at the continued sentencing hearing.  (Id.)  The record

7    demonstrates that Zepeda understood the entire written agreement

8    and chose not to withdraw his plea.  (Id.)

9    Petitioner responds in the Traverse by claiming that his

10   guilty plea was coerced because it was a "'blind-plea initiated by

11   counsel.'"  (Traverse 12, ECF No. 56.)  The California Court of

12   Appeal was the last state court to issue a reasoned opinion on

13   Zepeda's coercion argument.  (See Lodgment No. 11, In re Zepeda,

14   D061017, slip op. at 1-2.)  Relying on the same facts described

15   above in the ineffective assistance of counsel discussion, the

16   state appellate court rejected Zepeda's coercion claim:

17           There is nothing to indicate petitioner did not
        understand the agreement or that it was not knowingly,
18      intelligently and voluntarily made.  Indeed, petitioner's
        supporting documentation, showing his skills as a tutor
19      and his scholastic aptitude in high school and college,
        including receiving top grades in English, belies his
20      contention that he did not understand the agreement.
        (People v. Duvall (1995) 9 Cal.4th 464, 474-475.)

21

22   (Id. at 2.)

23   In his federal petition, Zepeda does not explain what

24   misrepresentations or coercive statements were made, or what terms

25   counsel failed to disclose.  (See First Am. Pet. 7, ECF No. 7.)

26   His coercion claim lacks the necessary specificity required to

27   present a federally cognizable claim.  See Foote v. Del Papa, 244

28

1  F. App'x at 80; <u>Jones v. Gomez</u>, 66 F.3d at 204-05.  On this basis,

2  his claim should be **DENIED**.

3      Even if the Court considers the more complete allegations from

4  Zepeda's state habeas petitions, he is not entitled to relief on

5  this ground.  "An involuntary guilty plea is 'a constitutionally

6  inadequate basis for imprisonment.'"  <u>Brown v. Salazar</u>, 431 F.

7  App'x 579, 579 (9th Cir. 2011) (quoting <u>Blackledge</u>, 431 U.S. at

8  75).  In <u>Blackledge</u>, the Court stated:

9      In administering the writ of habeas corpus . . . federal
       courts cannot fairly adopt a per se rule excluding all
10     possibility that a defendant's representations at the
       time his guilty plea was accepted were so much the
11     product of such factors as misunderstanding, duress or
       misrepresentation by others as to make a guilty plea a
12     constitutionally inadequate basis for imprisonment.

13 <u>Blackledge</u>, 431 U.S. at 75 (footnote omitted).  In <u>Brown</u>, the court

14 remanded the case for an evidentiary hearing.  Brown had provided

15 (1) detailed allegations in his state and federal habeas petitions,

16 (2) supporting declarations from three attorneys who witnessed the

17 underlying plea negotiations, and (3) a corroborating letter from

18 his trial attorney; Brown included requests for an evidentiary

19 hearing with each habeas petition he filed.  <u>Brown</u>, 431 F. App'x at

20 579.  The Ninth Circuit found that the California Supreme Court's

21 summary denial was an unreasonable violation of clearly established

22 Supreme Court precedent and that the petitioner had presented a

23 colorable claim for relief.  <u>Id.</u> at 579-580 (citing <u>Cullen v.</u>

24 <u>Pinholster</u>, 563 U.S. __, 131 S. Ct. 1388 (2011); <u>Blackledge</u> 431

25 U.S. at 75-76; <u>Machibroda v. United States</u>, 368 U.S. 487, 493

26 (1962)).

27      "The voluntariness of [a petitioner's] plea can be determined

28 only by considering all of the relevant circumstances surrounding

24

1    it." <u>Brady v. United States</u>, 397 U.S. 749, 749 (1970). "[T]here

2    is no per se rule against encouraging guilty pleas." <u>Corbitt v.</u>

3    <u>New Jersey</u>, 439 U.S. 212, 218-19 (1978). But a guilty plea must

4    "'represent[] a voluntary and intelligent choice among the

5    alternative courses of action open to the defendant.'" <u>Hill v.</u>

6    <u>Valdez</u>, 1:09-CV-00601-LMB, 2012 WL 5949205, at *3 (D. Idaho Nov.

7    28, 2012) (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31

8    (1970)). An agreement to plead guilty is not voluntary if it is

9    the result of "physical or psychological coercion." <u>Henderson v.</u>

10   <u>Morgan</u>, 426 U.S. 637, 653 (1976). "[A] plea is not knowing and

11   voluntary if it was the result of defense counsel's advice

12   amounting to ineffective assistance of counsel." <u>Hill</u>, 2012 WL

13   5949205, at *3 (citing <u>Hill</u>, 474 U.S at 59).

14       "A state court's factual finding that a plea was voluntary and

15   knowing is entitled to a presumption of correctness by a federal

16   habeas court." <u>Crayton v. Ryan</u>, No. CIV 10-01409 PHX FJM (MEA),

17   2010 WL 5488470, at *4 (D. Ariz. Dec. 2, 2010) (citing <u>Lambert v.</u>

18   <u>Blodgett</u>, 393 F.3d 943, 982 (9th Cir. 2004); <u>Cunningham v.</u>

19   <u>Diesslin</u>, 92 F.3d 1054, 1060 (10th Cir. 1996)). "Factual findings

20   of a state court are presumed to be correct and can be reversed by

21   a federal habeas court only when the federal court is presented

22   with clear and convincing evidence." <u>Id.</u> (citing <u>Miller-El v.</u>

23   <u>Dretke</u>, 545 U.S. 231, 240-41 (2005); <u>Anderson v. Terhune</u>, 467 F.3d

24   1208, 1212 (9th Cir. 2006); <u>Solis v. Garcia</u>, 219 F.3d 922, 926 (9th

25   Cir. 2000)).

26       Here, Petitioner initialed the section of his guilty plea form

27   that states, "I am entering my plea freely and voluntarily, without

28   fear or threat to me or anyone closely related to me." (Lodgment

No. 1, <u>People v. Zepeda</u>, No. [S]CD 221785 (Cal. Super. Ct. Apr. 15, 2010) (plea of guilty/no contest -- felony at 1.))  Further, at the change of plea hearing the trial judge reviewed the constitutional waivers in the agreement and asked Zepeda if he understood and wished to waive each right.  (Lodgment No. 12, <u>Zepeda v. Warden</u>, S201310 (petition for writ of habeas corpus at 58-60).)  Petitioner answered yes to each of the judge's questions.  (<u>Id.</u>)  Zepeda stated that he reviewed the agreement with his attorney, signed and initialed the form, and understood that he was accepting a stipulated ten-year sentence for robbery and assault with a firearm for the benefit of a gang.  (<u>Id.</u> at 58-59.)  After waiving his rights and stating that he understood the agreement, charges, and sentence, Petitioner pleaded guilty.  (<u>Id.</u> at 58-63.)  The prosecution dismissed Zepeda's remaining charges.  (<u>Id.</u> at 62.)

On the date set for sentencing, after Petitioner informed the judge of his concerns about his guilty plea, the judge appointed a new attorney to review the allegations and continued the sentencing for thirty days.  (Lodgment No. 5, Rep.'s Tr. 2-5.)  At the continued sentencing hearing, Zepeda stated that he did not wish to withdraw his guilty plea, and the judge imposed the stipulated sentence.  (Lodgment No. 15, Rep.'s Tr. 2-4.)

Petitioner relies on his sister's statements that she saw him sign a blank plea agreement form under the impression that he was pleading guilty to robbery with a gang enhancement.  (Lodgment No. 12, <u>Zepeda v. Warden</u>, S201310 (petition for writ of habeas corpus at 83-84).)  Yet, his sister's statements conflict with the rest of the evidence in the record.  <u>See</u> <u>Blackledge</u>, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of

verity.   The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") (citations omitted).

Although Zepeda argues that his plea was the result of coercion by his attorney, unlike the petitioner in Brown v. Salazar, he has not provided sufficient allegations, declarations, or corroborating evidence to support his contention.   The assertions that Petitioner was pressured into accepting a plea bargain are generalized and lack factual and evidentiary support to overcome the clear and convincing standard.   The plea agreement form and colloquies on April 15, 2010, when Zepeda pleaded guilty, and on July 23, 2010, the continued sentencing hearing, demonstrate that Zepeda understood the nature of the charges and the significance of his plea.   See Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993) ("The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.")

Some courts have interpreted similar claims as an ineffective assistance of counsel claim.   See Hill v. Valdez, 2012 WL 5949205, at *14 n.8 ("[B]ecause under Petitioner's facts, counsel is the primary factor allegedly causing the coercion, the underlying issue is always ineffective assistance of counsel (no other cause of the coercion was identified by Petitioner).") (citing Tollett v. Henderson, 411 U.S. 258 (1973)); Douglas v. Blacketter, No. CV 05-104-MA, 2007 WL 781457, at *4 (D. Or. Mar. 2, 2007) ("As petitioner has not rebutted with clear and convincing evidence the

27

presumption of correctness afforded the PCR trial court's factual findings, to be entitled to habeas corpus relief petitioner must show the PCR trial court decision was an unreasonable application of <u>Strickland</u>."); <u>Frelimo v. Ayers</u>, No. C97-0215 MMC, 1998 WL 730854, at *3 (N.D. Cal. Oct. 8, 1998) ("A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.") (citations omitted).  As discussed above, the appellate court properly found that Zepeda did not receive ineffective assistance of counsel. (Lodgment No. 11, <u>In re Zepeda</u>, D061017, slip op. at 2.)

Accordingly, the holding of the California Court of Appeal is not contrary to, or an unreasonable application of Supreme Court precedent.  See <u>Blackledge</u>, 431 U.S. at 74; 28 U.S.C.A. § 2254(d)(1).  Nor is it an unreasonable determination of the facts.  28 U.S.C.A. § 2254(d)(2).  Thus, Petitioner's second claim should be **DENIED**.

**D.   Claim Three:  Guilty Plea Not Intelligent**

Zepeda's third ground for relief is contained in two conclusory sentences:

> Petitioner[']s plea was not voluntary, knowing or intelligently made, received by the court without Petitioner[']s appreciation of its consequences and absent constitutional waivers of a right to a jury trial, to confrontation, and the right[]against compulsory self-incrimination in violation of Petitioner[']s due process of law guaranteed by Amendments 6, 5 and 14 to the U.S. Constitution.  Petitioner[']s guilty plea was uninformed and involuntary.

(First Am. Pet. 8, ECF No. 7.)  In place of additional facts, Zepeda simply lists five cases.  (<u>See</u> <u>id.</u>)

Petitioner's state petitions provide some clarity as to this claim.   In the petition he filed with the California Court of Appeal, Zepeda alleged that "counsel obtained Petitioner's signature to a 'package-deal' plea bargain before any written charges were written on the printed plea form, allowing the District Attorney to institute an assault charge per Penal Code 245(a)(2) and restrictions, which Petitioner was not advised of prior to the hearing."  (Lodgment No. 10, <u>Zepeda v. Warden</u>, [D061017] (petition for writ of habeas corpus at 26).)  He also maintains that the trial court failed to properly explain his rights to him.  (<u>Id.</u> at 29.)  Further, Zepeda claims that he "was not made aware that as a direct consequence he would be limited to work-time credits and programs, that he would have to register as a gang member and would be denied probation and an opportunity for a probation interview."  (<u>Id.</u>)

Figueroa insists that the federal claim, like the others, should be denied because it is conclusory, vague, and speculative.  (Answer Attach. #1 Mem. P & A. 8, ECF No. 46.)  Even if the pleading deficiency is overlooked, according to the Respondent, the record shows that Petitioner understood that he was agreeing to a ten-year prison sentence.  (<u>Id.</u> at 20.)  Zepeda initialed each waiver provision in the form corresponding to particular constitutional rights, and the judge explained each waiver to him.  (<u>Id.</u>)  Further, Petitioner was given court-appointed counsel and a later opportunity to withdraw the guilty plea, yet Zepeda chose not to do so.  (<u>Id.</u>)  He also confirmed under oath his waiver of his rights.  (<u>Id.</u>)

29

In his Traverse, Zepeda asserts that Carroll violated California Rules of Professional Conduct 3-110(A) and (B) and did not communicate formal offers from the prosecution. (Traverse 14-15, ECF No. 56.) The last state court to rule on this claim was the California Court of Appeal. (See Lodgment No. 11, In re Zepeda, D061017, slip. op at 1-2.) The court denied this claim, stating, "There is nothing to indicate petitioner did not understand the agreement or that it was not knowingly, intelligently and voluntarily made." (See id. at 2.)

"'[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill, 474 U.S. at 56 (quoting Alford, 400 U.S. at 31). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady, 397 U.S. at 748). The court must consider "whether the petitioner's guilty plea was voluntary and intelligent under the totality of the circumstances." Root v. Martel, No. CF 08-4219-SJO (OP), 2010 U.S. Dist. LEXIS 142778, at *13 (C.D. Cal. Oct. 29, 2010).

Some courts have stated that as long as a petitioner "'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" Barbee v. Ruth, 678 F.2d

11cv2350 JAH (RBB)

634, 635 (5th Cir. 1982) (quoting <u>Bradbury v. Wainwright</u>, 658 F.2d 1083, 1087 (5th Cir. 1981)).  Others have explained, "The defendant must not only <u>want</u> to plead guilty; he must have adequate <u>knowledge</u> of what the plea entails as well as the <u>intelligence</u> to bring that knowledge, along with all other pertinent knowledge, to bear on his decision."  <u>Stewart v. Peters</u>, 958 F.2d 1379, 1381 (7th Cir. 1992). But there is "'no fixed colloquy, no set of sequence or number of questions and answers, no minimum length of hearing, no Talismanic language that the judge is required to use.'"  <u>Dietrich v. Czerniak</u>, Civil No. 01-498-TC, 2007 WL 3046481, at *7 (D. Or. Oct. 7, 2007) (quoting <u>Stewart</u>, 958 F.2d at 1384).

Despite Zepeda's protestations, the record shows that he "understood the length of time he might possibly receive, [and] he was fully aware of his plea's consequences."  <u>See Barbee</u>, 678 F.2d at 635.  Furthermore, the agreement expressly states that Petitioner was pleading guilty to one count of robbery and one count of assault with a firearm for the benefit of a gang. (Lodgment No. 1, <u>People v. Zepeda</u>, No. [S]CD 221785 (plea of guilty/no contest -- felony at 1, 3).)  The plea form also provides that Zepeda would accept a ten-year stipulated sentence.  (<u>Id.</u> at 1.)  The form describes Zepeda's constitutional rights and includes a disclosure of the multiple potential consequences of pleading guilty, including having to register as a gang offender.  (<u>Id.</u> at 2.)  A waiver of rights under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), is also included in paragraph ten; it states that Petitioner waived his right to have any aggravating facts used to support an upper-term sentence determined by a jury.  (<u>Id.</u>)  In paragraph thirteen of the plea form, Petitioner waives his right to

a full probation report prior to sentencing.  (<u>Id.</u>)  Zepeda
initialed each of these sections and signed the form.  (<u>Id.</u> at 1-3.)

At the change of plea hearing on April 15, 2010, the judge
explained Petitioner's constitutional rights to him and asked if he
understood them and agreed to waive them.  (Lodgment No. 12, <u>Zepeda
v. Warden</u>, S201310 (petition for writ of habeas corpus at 59-60).)
Zepeda confirmed that he had initialed the change of plea form and
agreed to waive his rights.  (<u>Id.</u> at 58-60.)  He then pleaded
guilty.  (<u>Id.</u> at 59.)  On the date set for sentencing, the judge
appointed a new attorney for the Petitioner and gave him thirty
days to reconsider his guilty plea.  (Lodgment No. 5, Rep.'s Tr. 2-6.)  At the continued sentencing hearing, Zepeda informed the court
that he did not want to withdraw his guilty plea.  (Lodgment No.
15, Rep.'s Tr. 2-3.)

Zepeda's sister stated that Carroll told her brother that he
was pleading guilty to robbery with a gang enhancement, and Carroll
did not mention the assault charge.  Her version is belied by the
statements Zepeda made under oath and the other evidence in the
record.  The evidence supports the state courts' determinations
that the Petitioner was aware of the consequences he faced at the
time he waived his rights and accepted the plea offer.  <u>See</u> <u>Bousley
v. United States</u>, 523 U.S. 614, 621 (1998) ("'It is well settled
that a voluntary and intelligent plea of guilty made by an accused
person, who has been advised by competent counsel, may not be
collaterally attacked.'") (quoting <u>Mabry v. Johnson</u>, 467 U.S. 504,
508, (1984)).  "'[T]he concern with finality served by the
limitation on collateral attack has special force with respect to

convictions based on guilty pleas.'"  <u>Id.</u> (quoting <u>United States v.</u> <u>Timmreck</u>, 441 U.S. 780, 784 (1979)).  The state court decisions were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.  <u>See</u> 28 U.S.C.A. § 2254(d)(1).  Further, the courts did not unreasonably determine the facts.  28 U.S.C.A. § 2254(d)(2).  For these reasons, habeas relief premised on ground three of Zepeda's First Amended Petition should be **DENIED**.

**E.**   **Claim Four:  Sentence in Excess of Statutory Maximum**

In summary fashion, Zepeda alleges his fourth ground for relief as follows:

> Petitioner was sentenced to the upper term of the three terms provided by the California legislature without supporting jury findings to justify the upper term.  Specifically, Petitioner was convicted pursuant to an unauthorized sentence in violation of due process of law guaranteed by Amendments 5 [and] 14 to the U.S. Constitution and the 6[th] Amendment right to a fair trial.

(First Am. Pet. 9, ECF No. 7.)  To support his claim, he cites to <u>Apprendi v. New Jersey</u>, 530 U.S. 499 (2000); <u>Blakely</u>, 54[2] U.S. 296 (2004); and <u>Cunningham v. California</u>, 549 U.S. 270 (2007). (<u>Id.</u>)  In his state habeas corpus petition, he elaborated that the prosecutor "offered a stipulated sentence to the upper term of four years per Penal Code 245(a)(2) and the judge convicted Petitioner without stating the reasons for imposing such a sentence." (Lodgment No. 10, <u>Zepeda v. Warden</u>, [D061017] (petition for writ of habeas corpus at 31); <u>see</u> Lodgment No. 12, <u>Zepeda v. Warden</u>, S201310 (petition for writ of habeas corpus at 19-21).)

Figueroa insists that Petitioner's claim should be denied because it is conclusory, vague, and speculative.  (Answer Attach.

1   #1 Mem. P & A. 8, ECF No. 46.)  Respondent also contends that a

2   sentence in excess of the statutory maximum does not violate the

3   Constitution when a defendant agrees to a particular sentence.

4   (Id. at 21.)  Here, Zepeda stipulated to a ten-year sentence and

5   that was the sentence he received.  (Id. at 20-21.)  In his

6   Traverse, Petitioner states that he was misinformed of the

7   consequences of the plea, which resulted in a "sentence that was

8   not presented in the initial stages of counsel's consultation."

9   (Traverse 16-17, ECF No. 56.)

10       Petitioner raised this claim in the habeas petition he filed

11  with the California Court of Appeal, but the court did not address

12  the issue in its opinion.  (See Lodgment No. 10, Zepeda v. Warden,

13  [D061017] (petition for writ of habeas corpus at 31-33); Lodgment

14  No. 11, In re Zepeda, D061017, slip op. at 1-2.)  He also raised

15  the claim in the petition he filed in the California Supreme Court,

16  but that court denied the petition without a reasoned opinion.

17  (Lodgment No. 12, Zepeda v. Warden, S201310 (petition for writ of

18  habeas corpus at 19-21); Lodgment No. 16,

19  http://appellatecases.courtinfo.ca.gov (select supreme court; then

20  search by case number and follow to docket).)  Accordingly, there

21  is no reasoned opinion for this Court to defer to.

22       "Under such circumstances, [courts] independently review the

23  record to determine whether the state court clearly erred in its

24  application of Supreme Court law." Pirtle v. Morgan, 313 F.3d

25  1160, 1167 (9th Cir. 2002) (citing Delgado v. Lewis, 223 F.3d 976,

26  982 (9th Cir. 2000)); see Greene v. Lambert, 288 F.3d 1081, 1089

27  (9th Cir. 2002) ("(W)hile we are not required to defer to a state

28  court's decision when that court gives us nothing to defer to, we

34

must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.") (quoting <u>Fisher v. Roe</u>, 263 F.3d 906, 914 (9th Cir. 2001)).

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490.  In <u>Blakely</u>, the Court applied <u>Apprendi</u>, and invalidated a sentencing scheme that allowed a judge to increase a defendant's sentence beyond the statutory maximum based on judicial factfinding.  <u>Blakely</u>, 542 U.S. at 303.  Over two years later, in <u>Cunningham</u>, 549 U.S. 270, the Supreme Court held that California's determinate sentencing law violated <u>Apprendi</u>'s "bright-line rule" that facts in aggravation must be submitted to a jury and found beyond a reasonable doubt.  <u>Id.</u> at 291 (citing <u>Blakely</u>, 542 U.S. at 307-08).  The Court concluded that the California determinate sentencing laws resembled those that the Supreme Court invalidated in <u>Blakely</u>.  <u>Id.</u> at 294.

"Following the decision in <u>Cunningham</u>, the California legislature amended its statutes such that imposition of the lower, middle, or upper term is now discretionary and does not depend on the finding of any aggravating factors." <u>Butler v. Curry</u>, 528 F.3d 624, 652 n.20 (9th Cir. 2008) (citations omitted); <u>see Redd v. Trimble</u>, No. 11-CV-1275 LAB (WMc), 2011 WL 7856208, at *4 (S.D. Cal. Nov. 8, 2011).  The amended sentencing scheme took effect on March 30, 2007.  <u>See Kiser v. Gonzales</u>, Civil No. 11-CV-1944 DMS (NLS), 2012 WL 6641899, at *9 (S.D. Cal. Oct. 11, 2012) (citations omitted).

On April 15, 2010, Zepeda pleaded guilty and agreed to a stipulated sentence of ten years. (Lodgment No. 1, <u>People v. Zepeda</u>, No. [S]CD 221785 (plea of guilty/no contest -- felony at 1-3; <u>see</u> Lodgment No. 12, <u>Zepeda v. Warden</u>, S201310 (petition for writ of habeas corpus at 58-62).)  Therefore, the new law applies, and it was within the discretion of Petitioner's sentencing judge to select an upper term.  <u>See</u> <u>Fernan v. Garcia</u>, No. SA CV 11-983-DOC (PJW), 2012 WL 1440924, at *5 (C.D. Cal. Apr. 24, 2012) (citing <u>Juarez v. Allison</u>, No. CV 10-10001-GW E, 2011 WL 3654449, at *5 (C.D. Cal. Mar. 22, 2011); Cal. Penal Code § 1170(b)). "[I]mposing the upper term based on the agreed-on terms of a plea bargain does not run afoul of <u>Apprendi</u>." <u>Fernan</u>, 2012 WL 1440924, at *5 (citing <u>Graves v. Salazar</u>, No. EDCV 10-2013-DMG (OP), 2011 WL 6942080, at *6 (C.D. Cal. Sept. 30, 2011)).  On this basis alone, Zepeda's claim should be denied.

Further, the Supreme Court has not held that <u>Cunningham</u> applies to sentences resulting from plea bargains. <u>See</u> <u>Morales v. Hartley</u>, No. C 12-5311 PJH (PR), 2013 WL 5799997, at *2 (N.D. Cal. Oct. 28, 2013); <u>Redd v. Trimble</u>, 2011 WL 7856208, at *4; <u>Russell v. Martel</u>, No. EDCV 08-963 AG (FFM), 2011 WL 6817690, at *5 (C.D. Cal. Aug. 9, 2011); <u>Woods v. Wong</u>, No. 10-cv-00693 JLS (WMc), 2011 WL 6214393, at *19 (S.D. Cal. Mar. 10, 2011).  Thus, the state court did not unreasonably apply clearly established federal law.

Even assuming the law was clearly established, many courts have held that the <u>Apprendi</u>-<u>Blakely</u>-<u>Cunningham</u> tripartite is not violated when a sentence is the result of the agreed-upon terms of a plea bargain.  <u>See</u> <u>McGowan v. Bitter</u>, No. 11CV1620-LAB (PCL), 2013 WL 2898185, at *5 (S.D. Cal. June 12, 2013) ("[T]he right to a

1  jury trial on aggravating facts [can] be waived by the
2  defendant."); Soto v. Cullen, No. C 10-0468 CRB (PR), 2010 WL
3  4942274, at *3 (N.D. Cal. Nov. 24, 2010) (same); Amezcue v.
4  Almager, No. CV 08-3798-PA (JTL), 2009 WL 1513427, at *5 (C.D. Cal.
5  May 25, 2009) (same).  Zepeda agreed to the factual basis of his
6  plea, waived his Blakely rights, stipulated to a ten-year sentence,
7  and received a ten-year sentence.  (Lodgment No. 1, People v.
8  Zepeda, No. [S]CD 221785 (plea of guilty/no contest – felony at 1-
9  3.)  For these reasons, the state court decisions were not contrary
10 to, and did not involve an unreasonable application of, clearly
11 established law as determined by the United States Supreme Court.
12 See 28 U.S.C.A. § 2254(d)(1).  Accordingly, the Court recommends
13 that Petitioner's fourth ground for relief be **DENIED**.

14 **F.   Claim Five:  Choice of Counsel**

15      Zepeda's final ground for relief, labeled "Withdrawal/Vacate
16 Plea," is that Petitioner['s] conviction was the result of the
17 [court's] abuse of discretion in violation of due process of law
18 safeguarded by Amendments 6, 5 and 14 to the U.S. Constitution and
19 a Fair Trial.  (First Am. Pet. 10, ECF No. 7.)  He also lists four
20 California and two federal cases without discussion.  (See id.)

21      According to Figueroa, all of Zepeda's claims are conclusory,
22 vague, and speculative.  (Answer Attach. #1 Mem. P & A. 8, ECF No.
23 46.)  Zepeda explains the factual basis for the fifth claim in his
24 Traverse.  There, he asserts that the trial court denied him
25 "counsel of choice" prior to imposing his sentence.  (Traverse 17,
26 ECF No. 56.)  Petitioner submits that he had a private attorney
27 throughout his case and requested a continuance so that he could
28 hire new counsel.  (Id. at 18.)  Zepeda argues that he was

prejudiced because the right to hire the attorney of his choice is "regarded as the root meaning of the constitutional guarantee." (Id. (citations omitted).)

Respondent insists that Petitioner's allegations are also factually wrong. (Answer Attach. #1 Mem. P. & A. 21, ECF No. 46.) Figueroa states that Zepeda was represented by private counsel at the first sentencing hearing and requested time to hire a new attorney. (Id.) But once Petitioner learned that he would be remanded to custody, he requested that the court appoint an attorney instead. (Id. at 21-22 (citing Lodgment No. 5, Rep.'s Tr. 5).) Respondent maintains that the court did not prevent Zepeda from hiring a private attorney, as he had until the continued sentencing hearing to do so. (Id. at 22.) Petitioner chose not to hire new counsel. (Id.)

Petitioner admits in his third motion to stay that this claim is unexhausted. (Mot. Leave Stay & Abey 4, ECF No. 32.) Indeed, the record supports this contention. (See generally Lodgment No. 12, Zepeda v. Warden, S201310 (petition for writ of habeas corpus at 10-24).) Because Zepeda's First Amended Petition contains both exhausted and unexhausted claims, the Petition is "mixed." See Rose v. Lundy, 455 U.S. 509, 510 (1982).

Typically, mixed petitions should be dismissed. Id. at 522. Yet, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2). Courts may only deny an unexhausted claim on the merits if it is "perfectly clear" that the claim is not a "colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624

38

(9th Cir. 2005).  Unexhausted claims are reviewed de novo where there is no reasoned state court decision addressing that claim. Pirtle, 313 F.3d at 1167.  The Court therefore reviews this claim de novo.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  Included in the right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him."  United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).  "'[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'"  Id. (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-25 (1989)).  Additionally, a criminal defendant "should be afforded a fair opportunity to secure counsel of his own choice."  Powell v. Alabama, 287 U.S. 45, 53 (1932).

Although the right to one's counsel of choice "is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Wheat, 486 U.S. at 159 (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983); Jones v. Barnes, 463 U.S. 745 (1983)).  Rather, "the purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial[.]'"  Id. (quoting Strickland v. Washington, 466 U.S. at 689).  And when evaluating a Sixth Amendment claim "'the

39

1  appropriate inquiry focuses on the adversarial process, not on the

2  accused's relationship with his lawyer as such.'"  Id. (quoting

3  United States v. Cronic, 466 U.S. 648, 657 n.21 (1984)).

4      Although Petitioner insists that the trial court abused its

5  discretion and violated his due process rights, he fails to provide

6  any facts supporting this assertion.  See Foote v. Del Papa, 244 F.

7  App'x at 80; Jones v. Gomez, 66 F.3d at 204-05.  Zepeda's

8  conclusory allegations are insufficient, and on this basis alone,

9  the claim should be **DENIED**.

10     Alternatively, to the extent he argues that he was denied

11  choice of counsel, that claim is directly contradicted by the

12  record.  On July 14, 2009, Petitioner hired Carroll, a private

13  defense attorney, to represent him.  (Lodgment No. 10, Zepeda v.

14  Warden, [D061017] (petition for writ of habeas corpus at 13).)

15  Zepeda pleaded guilty and accepted the plea bargain on April 15,

16  2010, while still represented by Carroll.  (Lodgment No. 12, Zepeda

17  v. Warden, S201310 (petition for writ of habeas corpus at 57, 60-

18  61).)

19     Approximately one month later, on June 11, 2010, with Carroll

20  appearing as his attorney, Petitioner addressed the court to

21  complain about counsel's performance.  (Lodgment No. 5, Rep.'s Tr.

22  2-3.)  The judge noted that he was "bother[ed]" by the

23  "untimeliness" of Zepeda's request for a continuance because he

24  "had since April 15th when [he] changed [his] plea to get another

25  lawyer," but had chosen instead to proceed with Carroll's

26  representation.  (Id. at 4.)  Nonetheless, the court continued the

27  sentencing hearing until July 23, 2010, so that Zepeda could hire

28  another attorney.  (Id. at 4-5, 7.)  After Petitioner learned that

he was being remanded into custody, however, he requested that the court appoint counsel. (<u>Id.</u> at 5.)  The court appointed counsel to review the record and "report to [the court] whether or not there is a legal basis to withdraw [Petitioner's] plea of guilty."  (<u>Id.</u> at 6.)  At the continued sentencing hearing, Zepeda decided not to pursue a motion to withdraw his guilty plea and the court proceeded with sentencing.  (Lodgment No. 15, Rep.'s Tr. 2-4.)

Petitioner has failed to show that he was "erroneously prevented from being represented" by his attorney of choice.  <u>See</u> <u>Figueroa v. Cate</u>, 12-CV-00416-H (BLM), 2013 WL 1411988, at *5 (S.D. Cal. Apr. 8, 2013) (quoting <u>Gonzalez-Lopez</u>, 548 U.S. at 148). Quite the contrary; the trial court continued Zepeda's sentencing hearing so he could obtain a new attorney and appointed an attorney at Petitioner's request.  <u>See</u> <u>Wheat</u>, 486 U.S. at 159; <u>see also</u> <u>Figueroa</u>, 2013 WL 1411988, at *5 ("[T]he right is not absolute, and must be balanced against the needs of fairness and the needs of [the court's] calendar.  Trial courts are granted extreme latitude in balancing these interests.") (citations and internal quotation marks omitted).  Considering the "extreme latitude" granted to trial courts and the steps taken to allow Petitioner to hire a new attorney, Zepeda's claim that he was denied the right to the counsel of his choice should be **DENIED**.

## G.   **Evidentiary Hearing**

Finally, in his Traverse Petitioner requests an evidentiary hearing.  (Traverse 3, ECF No. 56.)  He does not present any facts that would warrant an evidentiary hearing.  <u>See</u> <u>Insyxienqmay v.</u> <u>Morgan</u>, 403 F.3d 657, 670 (9th Cir. 2005) (stating that the petitioner must demonstrate he failed to develop the factual basis

41

1  of his claims in state court and that his request comes within one

2  of two exceptions in § 2254(e)(2)(A) and (B)).  If the factual

3  basis for the claim was developed in state court, the federal

4  court considers whether a hearing is required under <u>Townsend v.</u>

5  <u>Sain</u>, 372 U.S. 293 (1963).  <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1078

6  (9th Cir. 1999).  Zepeda has not carried his burden.  His request

7  for an evidentiary hearing is therefore **DENIED**.

8  <center>**V.   CONCLUSION**</center>

9      For the reasons stated above, Zepeda's First Amended Petition

10  [ECF No. 7] should be **DENIED**.  This Report and Recommendation will

11  be submitted to the United States District judge assigned to this

12  case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any

13  party may file written objections with the Court and serve a copy

14  on all parties on or before February 3, 2014.  The document should

15  be captioned "Objections to Report and Recommendation."  Any Reply

16  to the objections shall be served and filed on or before February

17  17, 2014.  The parties are advised that failure to file objections

18  within the specified time may waive the right to appeal the

19  district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th

20  Cir. 1991).

21

22  DATED:  January 2, 2014                *Ruben Brooks*

23                                         Ruben B. Brooks
                                           United States Magistrate Judge

24

25  cc:  Judge Houston
          All Parties of Record

26

27

28